UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 24-CV-04344-KMM-SGE

Michael K. Hoffman,

        Petitioner,

v.

Warden, FCI Sandstone,

        Respondent.

**RESPONSE TO PETITION
FOR WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2241**

Petitioner Michael K. Hoffman, an inmate at the Federal Correctional Institution in Sandstone, Minnesota ("FCI Sandstone"), brings this 28 U.S.C. § 2241 habeas petition seeking a declaration establishing the amount of his "FSA Conditional Days" and his "Conditional Transition to Community date." He also seeks an order requiring Respondent conduct a review under the Second Chance Act. However, Petitioner is asking the Court to answer a hypothetical question due to the various factors governing First Step Act time credits ("FTCs") and the discretion afforded under the Second Chance Act ("SCA"). Respondent respectfully requests that the Court dismiss the petition.

## BACKGROUND

### I.    Hoffman's Status at the Bureau of Prisons

Hoffman is currently incarcerated at FCI Sandstone. *See* Declaration of Jade Beyer ("Beyer Decl."), at ¶ 2; *id.* Ex. A, at 1. He is serving a 180-month term of imprisonment for Conspiracy to Possess With Intent to Distribute and to Distribute 500 Grams or More

of Methamphetamine, in violation of 21 U.S.C. § 846 and 841(a)(1), and Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). Beyer Decl. ¶ 3; *id.* Ex. A, at 2. He has a projected release date of February 20, 2029, with consideration of his GCT and 365 days of FTCs. Beyer Decl. ¶ 3; *id.* Ex. A, at 3.

## II.    Good Conduct Time

The Bureau of Prisons shall release an individual "on the date of the expiration of the prisoner's term of imprisonment, less any time credited toward the service of the prisoner's sentence as provided in [18 U.S.C. § 3624] subsection (b)." 18 U.S.C. § 3624(a). The expiration of an inmate's term of imprisonment is governed by 18 U.S.C. § 3585, which involves a determination of when a sentence commences and any prior custody credit to which he is entitled. This date is reflected on an inmate's sentence computation sheet as the "Expiration Full Term Date." Beyer Decl. ¶ 5.

Section 3624(a) contemplates that the "Expiration Full Term Date" will be reduced by GCT according to § 3624(b):

> [A] prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, of up to 54 days for each year of the prisoner's sentence imposed by the court, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.

18 U.S.C. § 3624(b)(1); *see also* Beyer Decl. ¶ 6. Section 3624(b)(1) establishes the maximum amount of GCT an inmate may earn on their term of imprisonment. Beyer Decl. ¶ 7. The inmate will earn this GCT absent their losing GCT as a disciplinary sanction. *Id.* Therefore, when the Bureau generates an inmate's sentence computation, the Bureau

applies the projected maximum amount of GCT an inmate may earn to their computation, reflected in the "Statutory Release Date Projected." Beyer Decl. ¶ 8. The BOP also tracks the total GCT earned and projected. *Id.* If the inmate loses GCT as a disciplinary sanction, these projections are adjusted accordingly. *Id.*

## III.  The FSA's Time Credit Provisions

The FSA was enacted on December 21, 2018, to address the reentry of incarcerated individuals. Among other things, Congress directed the Attorney General to develop a risk and needs assessment system in consultation with an independent review committee. *See* 18 U.S.C. § 3632(a). As Congress directed, the BOP uses the risk tool to determine recidivism risk and classify each inmate as having a minimum, low, medium, or high risk of recidivism. *See id.* § 3632(a)(1). As the FSA directs, the BOP uses the needs assessment tool to determine the evidence-based recidivism reduction (EBRR) programming appropriate for each inmate. *See id.* § 3632(a)(3).

The FSA requires that each inmate undergo an individualized "initial risk and needs assessment" upon which FSA programming must be based. 18 U.S.C. § 3621(h)(1)(A); 18 U.S.C. § 3632(a)(1) (the BOP must "determine the recidivism risk of each prisoner as part of the intake process").

As part of the FSA, Congress created a system of time credits and other incentives to encourage inmates to participate in programming. 18 U.S.C. § 3632 provides:

> **(d) Evidence-based Recidivism Reduction Program Incentives and Productive Activities Rewards**.—The System shall provide incentives and rewards for prisoners *to participate in and complete* evidence-based recidivism reduction programs as follows:
> …

3

**(4)  Time Credits**.--

>  **(A)  In general**.--A prisoner, except for an ineligible prisoner under subparagraph (D), *who <u>successfully completes</u> evidence-based recidivism reduction programming or productive activities, shall earn time credits* as follows:
>
> >  (i)  A prisoner shall earn 10 days of time credits for every 30 days of *successful participation* in evidence-based recidivism reduction programming or productive activities.
> >
> >  (ii)  A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of *successful participation* in evidence-based recidivism reduction programming or productive activities.
>
>  **(B)  Availability.**--A prisoner may not *earn* time credits under this paragraph for an evidence-based recidivism reduction program *that the prisoner successfully completed*—
>
> >  (i)  prior to the date of enactment of this subchapter; or
> >
> >  (ii)  during official detention prior to the date that the prisoner's sentence commences under section 3585(a).

*Id.* § 3632(d)(4)(A), (B) (emphasis added).

FTCs are "applied toward time in prerelease custody or supervised release." *Id.* § 3632(d)(4)(C); *see also* 18 U.S.C. § 3624(g); 28 C.F.R. § 523.44(b)-(d). The types of prelease custody include home confinement and a residential reentry center (RRC), which are different from supervised release. *See* 18 U.S.C. §§ 3624(g)(2), (g)(3). And if the inmate has a term of supervised release imposed as part of his or her sentence, then "the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of

supervised release at an earlier date, not to exceed 12 months." *Id.* § 3624(g)(3); *see also* 28 C.F.R. § 523.44(d). However, FTCs cannot be applied until earned time credits equal the remainder of the inmate's sentence. 18 U.S.C. § 3624(g)(1)(A).

Unlike GCT, several factors impact the Bureau's ability to determine when an inmate's earned FTCs equal the time remaining on their sentence, including, but not limited to: the inmate's PATTERN risk score, FSA programming participation status, discipline, and removal from the institution. Beyer Decl. ¶ 10; *id.* Ex. B (outlining how inmates earn FTCs, limitations on earning FTCs, loss and restoration of FTCs, and how inmates apply FTCs). For example, the PATTERN risk score significantly impacts an inmate's potentially earned FTCs. Beyer Decl. ¶ 11. First, the PATTERN risk score determines the inmate's FTC earning rate under 18 U.S.C. § 3632(d)(4)(A). *Id.* Section 3632(d)(4)(A)(i) establishes that eligible inmates earn 10 days of time credits for every 30 days of successful participation in programming. *Id.* However, under § 3632(d)(4)(A)(ii), inmates who the Bureau has determined "to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation" in programming. *Id.* PATTERN scores are dynamic throughout an inmate's incarceration, so an inmate may switch between earning 10 or 15 days of FTCs for every 30 days of programming multiple times during their term of imprisonment. *Id.* Therefore, unlike § 3624(b)(1), which establishes a maximum on the number of GCT an inmate may earn absent a loss due to discipline, the total amount of FTCs an inmate may earn is difficult to predict due to PATTERN risk score fluctuations. *Id.*

5

Further, whether an inmate is able to apply FTCs when the total FTCs earned equals the time remaining on his sentence is dependent upon their PATTERN risk score. Beyer Decl. ¶ 12. Inmates with a Minimum or Low PATTERN score can automatically apply their FTCs; inmates with a Medium or High PATTERN score need Warden's approval to apply their FTCs. 18 U.S.C. § 3624(g)(1); Beyer Decl. ¶ 12; *id.* Ex. B, at 14-15. When the Bureau implemented the FTC calculator tool tracking the number of FTCs an inmate had earned, it also adjusted inmates' projected released date to include *earned* FTCs which could be applied towards an early release, which is reflected as the "Projected Satisfaction Date," "Projected Satisfaction Method" and "With FSA Credits Included" on the sentence computation. Beyer Decl. ¶ 13. This adjustment is only made if the inmate has a term of supervised release following their term of imprisonment and was a Low or Minimum PATTERN score. *Id.* When an inmate has earned less than 365 days of FTCs, the Projected Satisfaction Date will advance as the inmate earns additional FTCs; when the inmate has earned 365 days of FTCs, the date will no longer advance. *Id.* If the inmate's PATTERN score increases to a Medium or High score, the date will be removed from their computation. *Id.* The sentence computation was not updated to reflect any FTCs an inmate has earned towards a pre-release community placement. Beyer Decl. ¶ 14.

## IV. Pre-Release RRC and Home Confinement under the Second Chance Act

Congress has given the Bureau the authority to decide where to incarcerate federal inmates. 18 U.S.C. § 3621(b). Under the Second Chance Act (SCA), the Bureau is authorized to grant inmates, "to the extent practicable," up to 12 months in a pre-release community placement at the end of their sentences. *Id.* § 3624(c)(1). Under § 3624(c)(2),

6

the Bureau is authorized to place inmates in home confinement for the shorter of 10 percent of the inmate's term of imprisonment or 6 months at the end of their sentences.[1]

The BOP is required to consider each inmate's pre-release placement on an individual basis using the five factors articulated in 18 U.S.C. § 3621(b), and the recommended pre-release RRC placement should be "of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6)(C). The five § 3621(b) factors are: "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence: (a) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (b) recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the [U.S.] Sentencing Commission pursuant to section 994(a)(2) of title 28." 18 U.S.C. § 3621(b). The Bureau has promulgated regulations setting forth its duties under the Second Chance Act. 28 C.F.R. §§ 570.20-570.22.

Historically, an inmate's Unit Team will review him for up to a one-year pre-release RRC placement and/or the appropriate length of home confinement approximately 17 to 19 months before his projected GCT release date (now, the "Statutory Release Date Projected" on the sentence computation), using § 3621(b)'s five factors. Beyer Decl. ¶ 17.

---

[1] RRCs and home confinement are considered places of confinement. *Miller v. Whitehead,* 527 F.3d 752, 755 n.3 (8th Cir. 2008).

Unit Team staff primarily consider the factors articulated in § 3621(b)(2)-(b)(5), which focus on factors unique to the individual inmate and of which the inmate's Unit Team has unique knowledge and insight. *Id.* In considering the individual inmate's needs, the Bureau has stressed to Unit Team staff that although all inmates are *eligible* for up to 12 months in a pre-release RRC placement under the Second Chance Act, not all inmates are *appropriate* for such a placement. *Id.* While the review is conducted 17 to 19 months prior to the GCT release date, the referral is not submitted until closer to the proposed placement date in case the inmate's circumstances change. *Id.*

Once the inmate's Unit Team has considered the inmate's individualized needs and factors under § 3621(b)(2)-(b)(5), the institution's warden will approve their recommendation regarding the appropriate length of a pre-release community placement and recommended RRC location, and the institution's recommendation will be forwarded to the Bureau's Residential Reentry Manager ("RRM") field office overseeing the recommended RRC. Beyer Decl. ¶ 18. RRM staff will finalize the recommendation after considering § 3621(b)(1), *i.e.*, the resources of the facility contemplated. *Id.* RRM staff have been trained not to unilaterally deny pre-release RRC referrals or reduce a placement recommendation unless there are no available RRC beds within a reasonable distance for the inmate's specific date or time frame. *Id.*

## V.    The "Conditional Transition to Community" Date

In response to feedback from community stakeholders, the Bureau has attempted to provide inmates with more information about their potential release date from the BOP, as well as a forecast of when they might be eligible for a pre-release community placement

under the FSA and SCA. Beyer Decl. ¶ 19. The BOP has made adjustments to the planning dates since implementation. *Id.*

On October 4, 2024, the Bureau announced the addition of planning dates on inmates FTC Assessments: FTC Conditional Placement Date; Second Chance Act (SCA) Conditional Placement Date; and Conditional Transition to Community Date. Beyer Decl. ¶ 20; *id.* Ex. C. Staff were advised the dates were projections and had the potential to change: "The projected dates for credit application and release are subjective and can be affected by various factors, including the AIC's (Adult in Custody) continued eligibility for FTCs, participation in programs, and conduct while in custody. Therefore, employees should avoid presenting these dates as final or guaranteed. Instead, the focus should be on providing guidance and setting expectations for AICs, while remaining transparent about the possibility of date adjustments based on their behavior, program participation, and available community resources." Beyer Decl. ¶ 20; *id.* Ex. C, at 2.

The addition of planning dates occurred with the FTC calculator run in September 2024, but the BOP quickly realized there was a coding error in the calculator. Beyer Decl. ¶ 21. The code did not account for § 3624(g)(1)(A)'s requirement that FTCs could not be applied until the number of FTCs equaled the time remaining on an inmate's sentence. *Id.* Rather, the code continued to calculate FTCs once the inmate moved into a pre-release community placement based on their earned FTCs. *Id.* For example, if an inmate had earned 300 FTCs towards a pre-release community placement, he would be entitled under § 3624(g)(1)(A) to transfer to that placement 300 days prior his projected release date. *Id.* However, the code allowed him to continue to earn time credits for that remaining 300 days

9

in BOP custody in a pre-release community placement, totaling 150 FTCs assuming an earning rate of 15 days of FTCs for 30 days of programming. *Id.* But, the Bureau determined it would be contrary to § 3624(g)(1)(A) to transfer the inmate to a pre-release community placement 450 days prior to their projected release date because he would not be eligible to apply 150 days of those FTCs until they were earned. *Id.*

Inmates were provided access to "Talking Points" regarding the planning dates included on their FTC Assessments. Beyer Decl. ¶ 22; *id.* Ex. D. In the talking points, inmates were advised the September 2024 dates were distributed prematurely. Beyer Decl. ¶ 22; *id.* Ex. D, at 1. Further, inmates were given the following explanation of the three planning dates:

- **FTC Conditional Placement Date**: This date reflects the maximum amount of FSA Federal Time Credits an FSA eligible individual can earn towards pre-release confinement (Residential Reentry Center/Work Release Center or home confinement) given their current PATTERN risk level. If this date is 'N/A' then you will not earn any FTCs towards pre-release placement and the SCA conditional placement date should be used for planning.

- **Second Chance Act (SCA) Conditional Placement Date**: This date is based on the regular rules under the Second Chance Act if you are not receiving any FTCs toward pre-release placement. **This date may default to 365 days if your Unit Team has not conducted an individualized assessment. SCA is not guaranteed and requires an individualized assessment which must be conducted by Unit Team. Therefore, if a default of 365 days is reflected, this date is subject to change based on the required five-factor review.** Individuals with pending charges and/or detainers, are not eligible for consideration under SCA.

- **Conditional Transition to Community Date:** This date reflects the earliest date you may transition to the community considering both

10

the FSA Conditional Placement Date and the SCA Conditional
Placement Date.

Beyer Decl. ¶ 23; *id.* Ex. D, at 1-2. Inmates were further advised: "Remember, this is a
PLANNING TOOL which will be used to help prepare you for placement in the
community, these dates are not guaranteed and are subject to change based on behavior,
program participation, eligibility, appropriateness, and community resources!!" Beyer
Decl. ¶ 24; *id.* Ex. D, at 2.

On March 31, 2025, the Bureau notified staff that the 365-day SCA default value in
the planning section of the FTC Assessment would be changed to a default of zero days.
Beyer Decl. ¶ 25; *id.* Ex. E. The change was part of a bigger change to the use of RRC
bedspace. *Id.* This memorandum was then rescinded on April 10, 2025. Beyer Decl. ¶ 26;
*id.* Ex. F.

On May 28, 2025, among other topics, the Bureau issued updated guidance
indicating staff should use the conditional placement dates on the FTC Assessment for
purposes of making pre-release community placement referrals based on FTCs and under
the SCA. Beyer Decl. ¶ 27; *id.* Ex. G. It was noted that updates would be made to FTC
Assessments to reflect the statutory limits of the SCA. Beyer Decl. ¶ 27; *id.* Ex. G, at 1.

On June 17, 2025, the BOP issued yet another memorandum impacting how staff
processed pre-release community placements and replacing the May 28, 2025,
Memorandum. Beyer Decl. ¶ 28; *id.* Ex. H. Under this memorandum, the BOP indicated
that the prerelease community placement authorities under the FSA and SCA were
cumulative and should be applied "in sequence to maximize prerelease time in community

11

custody." Beyer Decl. ¶ 29; *id.* Ex. H, at 1. The BOP recognized that the conditional placement dates on the FTC Assessment were "forward-looking tools for release planning" and are projections. Beyer Decl. ¶ 30; *id.* Ex. H, at 2. Staff were to use the conditional placement dates for pre-release community placement referrals. *Id.* Regarding the SCA, the BOP indicated, "[t]he SCA Conditional Placement date reflects the window under 18 U.S.C. § 3624(c)—up to 12 months (RRC) or 6 month or 10% of the sentence (HC)—for which the individual is expected to qualify, subject to a five-factor review." Beyer Decl. ¶ 31; *id.* Ex. H, at 2. Thus, the BOP stressed that staff should continue to make referrals for pre-release community placements under the SCA on an individualized basis. Beyer Decl. ¶ 31; *id.* Ex. H, at 2-3.

## VI.    Hoffman's Sentence and FTC Assessment Sheets

Hoffman is eligible to earn First Step Act time credits under 18 U.S.C. § 3632(d). Beyer Decl. ¶ 33; *id.* Ex. I. He had a Medium PATTERN score for his first nine assessment periods, from December 21, 2018, through December 28, 2022. Beyer Decl. ¶ 34; *id.* Ex. I, at 38-39. He lowered his PATTERN score to a Low from December 28, 2022, through June 26, 2023. *Id.* His score then raised to a Medium from June 26, 2023, through December 23, 2023. *Id.* He has maintained a Low PATTERN score for his assessment periods since December 23, 2023. *Id.* Hoffman earned FTCs at a rate of 10 days for 30 days of programming from December 21, 2028, through December 17, 2024. At that point, he began earning FTCs at a rate of 15 days for 30 days of programming. *See* Beyer Decl. Ex. I, at 38-39.

As of July 12, 2025, Hoffman has earned 365 days of FTCs towards an early release and 460 days of FTCs towards a pre-release community placement. Beyer Decl. ¶ 36; *id.* Ex. I, at 38. As previously mentioned, Hoffman has a projected release date of February 20, 2029, with consideration of his GCT and 365 days of FTCs. Beyer Decl. ¶ 37; *id.* Ex. A, at 3; *id.* Ex. I, at 40. Assuming the "best case scenario" for Hoffman regarding FTC earnings, *e.g.*, Hoffman maintains his Low PATTERN score and remains in FTC earning status, the Bureau projects he will earn a total of 745 days of FTCs towards a pre-release community placement, establishing a "FSA Conditional Placement Date" of February 6, 2027. Beyer Decl. ¶ 38; *id.* Ex. I, at 40.

The FTC Assessment sheet has not yet been updated to reflect the changes mentioned in the June 17, 2025, Memorandum, so Hoffman's most recent FTC Assessment does not contain an "SCA Conditional Placement Date." Beyer Decl. ¶ 39; *id.* Ex. I, at 40. The earliest Hoffman would be eligible for a SCA pre-release community placement would be February 6, 2026. Beyer Decl. ¶ 40. Since Unit Teams are now using the FSA Conditional Placement Date for pre-release planning purposes, he is now in the 17 to 19 month window for consideration for a SCA pre-release community placement, and the Unit Team is in the process of initiating his referral. *Id.*

On Hoffman's most recent FTC Assessment, his "Conditional Transition to Community Date" is February 6, 2027. Beyer Decl. ¶ 40; *id.* Ex. I, at 40.

## ARGUMENT

Hoffman's petition should be dismissed, or in the alternative, denied. Regarding his FTC claim, as cases in this District have recognized, FTCs are conditioned on numerous

dynamic requirements, and inmates do not, therefore, have a general claim of entitlement to them. Second, his claims involving the FSA (to the extent he seeks FTCs towards a pre-release community placement) and SCA are not cognizable in habeas. Third, Hoffman is asking the Court to resolve a hypothetical question by prospectively declaring his FTC and SCA placement dates. But even if the Court reaches the merits of the Petition, it should be denied, as the BOP has correctly calculated projected FTCs.

## I.    The Petition Should Be Dismissed.

### A.    FTCs Are Dynamic and Conditional Under the FSA, Making Them an Untenable Basis for a Habeas Claim.

FTCs under the FSA "are not a general entitlement." *Fiorito v. Fikes*, Nos. 22-cv-0749 (PJS/TNL), 22-cv-0759 (PJS/TNL), 22-cv-0797 (PJS/TNL), 2022 WL 16699472, at *6 (D. Minn. Nov. 3, 2022), *aff'd*, 2023 WL 4841966 (8th Cir. 2023) (per curiam). Rather, they can be an incentive to eligible inmates who complete the required recidivism reduction programming under the FSA. *Id.* While the FSA provides a qualified *opportunity* to earn FTCs by participating in the required programming at various times during detention, this does not create a protected interest in their award that is cognizable in habeas. *Fiorito*, 2022 WL 16699472, at *6.

This is because FTCs are contingent on numerous factors comprising a multi-layered program. Assuming an inmate is eligible to earn FTCs, *see* 18 U.S.C. § 3632(d)(4)(D), FTCs may only be applied to provide prelease custody or earlier supervised release to an inmate when various additional requirements are met, including maintaining certain recidivism risk scores determined near the end of an inmate's sentence. *See* 18

U.S.C. § 3624(g). As the FSA expressly states, the recidivism risk of each prisoner is "based on factors including indicators of progress, and of regression, that are *dynamic and that can reasonably be expected to change while in prison*." 18 U.S.C. § 3632(a)(4) (emphasis added). In addition to various other requirements, an inmate must also first earn time credits "in an amount equal to the remainder of the prisoner's imposed term of imprisonment" before an inmate is eligible for application of the credits. 18 U.S.C. § 3624(g)(1)(A).

And where FTCs are applied to an inmate's sentence, under the FSA, the BOP can apply them "toward time in prelease custody *or* supervised release." 18 U.S.C. § 3632(d)(4)(C) (emphasis added). Pre-release custody encompasses home confinement or RRC placement—places of confinement that do not change the length of a prisoner's sentence and are not reviewable BOP decisions. *See Spencer v. Haynes,* 774 F.3d 467, 469-70 (8th Cir. 2014); *Kruger v. Erickson,* 77 F.3d 1071, 1073 (8th Cir. 1996); *Johnson v. Birkholz,* No. 21-cv-2017 (PJS/LIB), 2022 WL 3135304, at *1 (D. Minn. Aug. 5, 2022); *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Moorman v. Thalacker*, 83 F.3d 970, 973 (8th Cir. 1996). Early transfer to supervised release can be a possibility under the FSA, but as the Act states, the BOP can apply FTCs toward *either* prelease custody "or" supervised release. 18 U.S.C. § 3632(d)(4)(C). Thus, even where FTCs are applied to an inmate's sentence, the FSA gives the BOP discretion regarding how to do so.

Considering these contingencies, the court in *Fiorito* dismissed an inmate's habeas challenge regarding FTCs. In that case, Fiorito claimed that his placement in the SHU

deprived him of a protected liberty interest because he could not complete required FSA programming in the SHU, and therefore could not earn FTCs. The court rejected Fiorito's argument, discussing the statutory contingencies underlying the FTC program and observing that even if Fiorito had earned FTCs for the days in the SHU, "the duration of Fiorito's confinement would not necessarily be reduced by a single day." 2022 WL 16699472 at *6. The court further reasoned that, unlike good time credits,

> … *FTCs are not a general entitlement*.  Instead, prisoners are merely afforded the *opportunity* to earn FTCs by participating in recidivism-reduction programming…. *The statute and accompanying regulations betray no expectation that FTC credits could reasonably be regarded as an entitlement, rather than as a benefit that a prisoner might or might not be able to earn at various points during his detention*.

*Id.* at *6 (emphasis added). *See also Gant v. King*, No. 23-cv-1766 (NEB/ECW), 2023 WL 6910771, at *3 (D. Minn. Oct. 19, 2023) (dismissing habeas petition raising an FTC credits issue and noting that "[c]ourts addressing this issue, including in this District, have determined that prisoners do not have a protected liberty interest in the application of FSA time credits" (citations omitted)); *Smith v. Eischen*, No. 22-cv-1704 (NEB/DJF), 2023 WL 4203165, at *2 (D. Minn. Jun. 27, 2023), *aff'd*, 2024 WL 1479769 (8th Cir. Apr. 5, 2024) (per curiam) ("GCT credits implicate protected liberty interests that can be vindicated on a habeas petition, but the application of FSA credits is *conditional* and therefore the credits do not create the same liberty interests." (emphasis added)); *Jun v. FPC-Duluth*, No. 22-cv-704 (JWB/ECW), 2023 WL 5917739 at *9 (D. Minn. Jun. 30, 2023) ("[U]nlike Good Conduct Time credits, FSA Time Credits are not a general entitlement and the mere opportunity to earn credit toward the satisfaction of a sentence does not create a protected

liberty interest."); *R&R adopted*, 2023 WL 5899128 (Sept. 11, 2023); *Purdy v. Lejeune*, No. 22-cv-2821 (JRT/ECW), 2023 WL 4561334, at *15 (D. Minn. Jul. 17, 2023), *R&R adopted*, 2023 WL 5039748 (Aug. 8, 2023).

In other words, Hoffman asserts an entitlement to FTCs prior to actually earning them under the FSA; such a claim is not cognizable in habeas.

**B.    Hoffman's Claims Under The First Step Act and Second Chance Act Are Not Cognizable in Habeas.**

Indirectly, by asking for a declaration of the maximum FTC and SCA pre-release community placement he is entitled to, Hoffman is asking for additional time in a pre-release community placement under the pre-release community placement portion of the FSA and SCA. These claims are not cognizable in habeas, because even if the request were granted, he would not spend a minute less in BOP custody. Instead, he would only spend more of his BOP detention in a pre-release community placement. Hoffman's petition is, therefore, a challenge to the conditions of his confinement rather than a challenge to the length of his confinement itself. Such a challenge is not cognizable in habeas.

Under 28 U.S.C. § 2241(c)(3), a writ of habeas corpus "shall not extend to a prisoner" unless he is "in custody in violation of the Constitution or laws or treaties of the United States." In *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973), the Supreme Court stated, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody." *Id*. at 484.

The Eighth Circuit Court of Appeals first addressed the propriety of a conditions-of-confinement habeas petition in *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996),

17

where Kruger filed a habeas petition claiming a law requiring him to provide a blood sample violated due process. *Id*. Starting from the premise that, "The prisoner's label cannot be controlling," the court emphasized, "[i]t is the substance of the relief sought which counts." *Id.* The Court of Appeals concluded "the district court should have dismissed the petition for a writ of habeas corpus for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Id.* In doing so, the court articulated the applicable rule:

> Where petitioner seeks a writ of habeas corpus and fails to attack the validity of his sentence or the length of his … custody, the district court lacks the power or subject matter jurisdiction to issue a writ.

*Id.*; *see also Smith v. Warden of Duluth*, No. 18-cv-2555 (WMW/LIB), 2019 WL 3325837, at *3 (D. Minn. Apr. 23, 2019), *R&R adopted as modified*, 2019 WL 3323063 (July 24, 2019) ("Petitioner has raised a conditions-of-confinement claim that cannot be properly brought and maintained in a federal habeas action because this Court does not have subject matter jurisdiction over such a claim.").

In 2014, the Eighth Circuit Court of Appeals expressly followed *Kruger* and again held that habeas is improper for conditions-of-confinement claims. *See Spencer v. Haynes*, 774 F.3d 467, 469-70 (8th Cir. 2014). In *Spencer*, the petitioner asserted his placement in restraints during a medical assessment violated due process. *Id*. The Eighth Circuit affirmed dismissal of the petition, holding "a habeas petition is not the proper claim to remedy his alleged injury." *Id.* at 470. The court found a claim challenging a prisoner's conditions of confinement must be raised in a civil rights action. *Id.* at 470-71; *see also Pettersen v. Clarke,* 82 F.3d 421, at *1 (8th Cir. 1996) (per curiam); *Wilborn v. Mansukhani*, 795 F. App'x 157, 163 (4th Cir. 2019) ("Since *Preiser*, a circuit split has

18

deepened on this question. Seven of the ten circuits that have addressed the issue in a published decision have concluded that claims challenging the conditions of confinement cannot be brought in a habeas petition.").

Under Eighth Circuit precedent, "[w]hen a prisoner is not challenging either the fact or the duration of his confinement, habeas is not the proper remedy, and the court lacks jurisdiction over his claims." *Johnson v. Birkholz*, No. 21-cv-2017 (PJS/LIB), 2022 WL 3135304, at *1 (D. Minn. Aug. 5, 2022) (citing *Spencer,* 774 F.3d at 469-71; *Kruger*, 77 F.3d at 1073). It is well established that a federal prisoner's claim that he should be transferred to pre-release confinement in an RRC or home confinement "amounts only to an attack on the conditions of the prisoner's confinement and therefore is not cognizable on habeas review." *Id.*

Being "in custody" is a necessary condition for seeking habeas relief, *see* 28 U.S.C. § 2241(c), but it is not a sufficient condition by itself. If it were, then any claim raised by a prisoner could be presented through a habeas petition, including claims challenging conditions of confinement rather than the fact or duration of confinement. In this circuit, claims attacking the conditions of confinement must be raised through traditional, non-habeas civil litigation. *See Spencer*, 774 F.3d at 469–71.[2]

---

[2] Prior to and following *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), the Court has dismissed similar RRC and home confinement placement claims brought under habeas for lack of subject matter jurisdiction. *See, e.g.*, *Faleide v. Eischen*, No. 24-cv-3325 (JWB/SGE), 2024 WL 5159313, at *2 (D. Minn. Nov. 13, 2024), *R&R adopted*, 2024 WL 5158483 (Dec. 18, 2024); *Heurung v. Rardin*, No. 23-cv-3749 (PAM/LIB), 2024 WL 4884482, at *3 (D. Minn. Oct. 17, 2024), *R&R adopted*, 2024 WL 4882735 (Nov. 25, 2024); *Young v. Eischen*, No. 23-cv-3227 (PJS/JFD), 2024 WL 418702, at *3 (D. Minn. Jan. 3, 2024), *R&R adopted*, 2024 WL 416445 (Feb. 5, 2024).

Courts in this District and Circuit have routinely considered RRCs and home confinement as places of confinement. *See United States v. Houck*, 2 F.4th 1082, 1085 (8th Cir. 2021) (discussing home confinement as a place of confinement); *see also Williams v. Birkholz*, No. 20-cv-2190 (ECT/LIB), 2021 WL 4155614, at *6 (D. Minn. July 19, 2021) ("Being transferred to home confinement is not a 'release' from incarceration."), *R&R adopted*, 2021 WL 4155013 (Sept. 13, 2021). The BOP has exclusive authority to determine the placement of prisoners. *See Williamson v. Eischen*, No. 23-cv-2165, 2024 WL 4151497, at *3 (D. Minn. Aug. 12, 2024), *R&R adopted*, 2024 WL 4151331 (Sep. 11, 2024) (citing *Garcia v. Eischen*, No. 22-cv-0444 (SRN/BRT), 2022 WL 4084185, at *2 (D. Minn. Aug. 16, 2022) (collecting cases)); *Williams*, 2021 WL 4155614, at *3 ("[I]t is the BOP—not the courts—who decides whether home detention is appropriate.")

Hoffman cites several Eighth Circuit cases for the proposition that subject matter jurisdiction exists. ECF No. 20, at 4. But all the cited cases were decided after *Kruger* and before *Spencer*. None of them addressed the jurisdictional question at issue here, and none of them announced a holding that conflicted with *Kruger* or *Spencer*. Thus, this Court should rely on *Kruger* and *Spencer*—rather than *Elwood* or *Miller*—when dismissing habeas petitions that seek transfers to RRCs. *See, e.g.*, *Sichting v. Rardin*, No. 24-cv-3163 (SRN/DJF), 2024 WL 4785007, at *2-3 (D. Minn. Nov. 14, 2024) (collecting authority); *Gallop v. Segal*, No. 24-cv-1357 (JWB/DTS), 2024 WL 2946249, at *2 (D. Minn. May 14, 2024) (collecting authority), *R&R adopted by* 2024 WL 2943796 (June 11, 2024).

Because Hoffman's claim that he is entitled to a longer pre-release community placement is a conditions-of-confinement claim not cognizable in habeas, his claims under the FSA and SCA should be dismissed for lack of jurisdiction.

### C.    The Petition Should Also Be Dismissed Because Hoffman Lacks Standing.

Under article III of the Constitution, federal courts are limited to hearing "cases" and "controversies." To establish standing, the party seeking relief must establish that it suffered an actual injury, traceable to the conduct of the adverse party, which is redressable by a favorable court decision. One purpose of the standing requirement is to prevent hypothetical or speculative decisions that afford no true relief. *See Pub. Water Supply Dist. No. 8 v. City of Kearney*, 401 F.3d 930, 932 (8th Cir. 2005); *Shain v. Veneman*, 376 F.3d 815, 817-18 (8th Cir. 2004). The Court should not address hypothetical or abstract questions but rather definite and concrete disputes. *See Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1037-38 (8th Cir. 2000).

A related principle, derived from the constitutional rule of standing, is that of ripeness. *See Minn. PUC v. FCC*, 483 F.3d 570, 582-83 (8th Cir. 2007). Ripeness limits federal courts from considering issues prematurely, particularly where a court decision has the potential to interfere with the policies of government agencies. *See id.* As a general rule, a dispute is not ripe where it depends upon events that may not occur as anticipated or may not occur at all. *See id.*

Here, Hoffman is asking the Court to provide a definitive date, accounting for the maximum amount of FTC and SCA placement, but that the date is inherently hypothetical. While the BOP can better predict GCT due to the simple calculation of 54 days per year imposed, its projected number of GCT referenced on an inmate's sentence computation remains just that, a projection. The projection can change if the inmate loses GCT due to discipline. The projection of FTCs is even more hypothetical than GCT because the earning rate, earning status, and ability to comply is dynamic throughout the inmate's term of imprisonment. And, although § 3624(c) sets an upper limit on the length of a pre-release community placements under the SCA, the actual placement length is within the discretion of the Bureau of Prisons.

The Bureau has attempted to provide inmates with more information about their potential release date from the BOP and forecast when they might be eligible for a pre-release community placement. Beyer Decl. ¶ 19. However, the conditional placement dates are merely the best-case hypothetical for inmates and subject to change if the relied-upon assumptions change. Hoffman's petition essentially asks the Court to etch the Bureau's hypothetical date into stone for him. If the Court were to do so, Hoffman is not receiving any tangible relief; the date would still be subject to change.

Further, Hoffman's FSA and SCA claims are not ripe. First, as to his FSA claim, the amount of FTCs he has actually earned (365 days of FTCs towards an early release and 460 days of FTCs towards a community placement) does not equal the remainder of his term of imprisonment; his Statutory Release Date Projected is February 20, 2030, with his

good conduct time. Beyer Decl. Ex. A, at 3. He is not yet entitled to apply his earned FTCs. *See* 18 U.S.C. § 3624(g)(1)(A). The BOP projects he will be able to do so on February 6, 2027. Beyer Decl. ¶ 38. Second, as to his SCA claim, his Unit Team is beginning the referral process, but it has not yet completed it. *Id.* at ¶ 40.

> **D.    The Bureau's Individualized Determination Regarding Hoffman's Pre-Release Custody Placement under the SCA Is Exempt from Judicial Review.**

Hoffman's Second Chance Act claim also challenges a designation decision that Congress expressly left to the Bureau's discretion. In 18 U.S.C. § 3621, Congress provided the Bureau with exclusive authority to designate an inmate's place of confinement:

> Place of imprisonment.--The Bureau of Prisons *shall* designate the place of the prisoner's imprisonment . . . [after considering factors (1) – (5)] . . . . Notwithstanding any other provision of law, *a designation of a place of imprisonment under this subsection is not reviewable by any court*.

18 U.S.C. § 3621(b) (emphasis added).

Further, Congress has explicitly exempted the decisions made by the BOP under 18 U.S.C. §§ 3621 and 3624 regarding a specific inmate from the judicial review provisions of the APA: "The provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter." *See* 18 U.S.C. § 3625; *see also Martin v. Gerlinksi*, 133 F.3d 1076, 1079 (8th Cir. 1998) (recognizing that the court had the power to review policy-based decisions by the Bureau of Prisons but not the discretionary, adjudicative decisions made under the policy). In exempting the BOP's decisions regarding a specific inmate from review, Congress stated:

> This section makes clear that certain of the provisions of the Administrative Procedures Act do not apply to any determination, decision, or order of the Bureau of Prisons. This result is in accord with recent case law, and will assure that the Bureau of Prisons is able to make decisions concerning the appropriate facility, corrections program, and disciplinary measures for a particular prisoner *without constant second guessing*.

S. Rep. No. 98-225 at 149 (1983), 1984 U.S.C.C.A.N. 3182, 3332 (emphasis added).

The Eighth Circuit Court of Appeals and courts in this District have confirmed Congress' mandate that judicial review of BOP's inmate placement decisions is statutorily precluded. *United States v. Houck*, 2 F.4th 1082, 1085 (8th Cir. 2021) (finding that because § 3624(c) gives "authority to place a prisoner in home confinement to the BOP," a district court "[does] not have authority to change [an inmate's] place of imprisonment to home confinement"); *Jorgensen v. Birkholz*, No. 20-cv-2349 (NEB/DTS), 2021 WL 2935641, at *2 (D. Minn. July 13, 2021) (holding that the court "has no power" to review a BOP's home confinement placement decision because "[t]he BOP has the sole authority to designate where an inmate will serve his sentence."); *Simon v. LaRiva*, No. 16-cv-00146 (ADM/TNL), 2016 WL 1626819, at *6 (D. Minn. Mar. 10, 2016) ("[T]his Court lacks subject matter jurisdiction over Petitioner's challenge to the BOP's application of the § 3621(b) factors and other considerations" in determining RRC placement.); *Crawford v. Nicklin*, No. 13-cv-2462 (JRT/SER), 2014 WL 538699, at *7-8 (D. Minn. Feb. 11, 2014) (courts lack subject matter jurisdiction to review BOP's RRC placement determinations). This Court should do the same, and may dismiss for this reason alone.

24

**II.    In the Alternative, Hoffman's Petition Should Be Denied, As He Is Incorrect That He Can Earn FTCs On The Total Sentence Imposed or While In a Pre-Release Community Placement.**

Hoffman argues the Bureau's projected calculation of his FTCs is wrong and posits two alternative amounts and corresponding dates. First, Hoffman argues that he is entitled to earn FTCs through September 19, 2031, which represents his full-term release date excluding the application of GCT. ECF No. 20, at 7; Beyer Decl. Ex. A, at 3. Under this calculation, he believes he will earn a total of 1,580 days of FTCs towards a pre-release community placement, resulting in a Conditional Transition to Community Date of October 23, 2024. ECF No. 20, at 7. According to Hoffman, 18 U.S.C. § 3632(d)(6) supports this argument. *Id.* at 8 n.4. In the alternative, Hoffman argues he will, at a minimum, continue to earn FTCs through February 20, 2029 (his projected release date), with consideration of his GCT and 365 days of FTCs. *Id.* at 8. Using this date, he believes he will earn a total of 1,110 days of FTCs toward a pre-release community placement, resulting in a Conditional Transition to Community Date of February 6, 2025. Neither calculation is supported by the FSA.

During the rulemaking process, the Bureau acknowledged *some* inmates would continue to earn FTCs while in a pre-release community placement: "After carefully considering the comments received, the Bureau agrees that inmates in prerelease custody— whether in a residential reentry center (RRC) or on home confinement—are eligible to earn FSA Time Credits under 18 U.S.C. 3632(d)(4)(A), which they could presumably apply, under 18 U.S.C. 3632(d)(4)(C), *toward transfer to supervised release*." FSA Time Credits, 87 Fed. Reg. 2705, 2712 (Jan. 19, 2022) (emphasis added). But this statement applies to

the small group of inmates who have earned less than 365 days of FTCs prior to their transfer to a pre-release community placement under the SCA. These inmates continue to accrue FTCs in their community placement and become eligible to apply them under § 3624(g)(1)(A) when the amount of FTCs equals the time remaining on their sentence.

That situation is not the one presented by Hoffman. Rather, as of July 12, 2025, he has already earned 365 days of FTCs toward an early release, *see* Beyer Decl. ¶ 38; *id.* Ex. I, at 38, and any additional time credits he earns will be applied towards a pre-release community placement. Interpreting the FSA's provision as to when FTCs can be applied, *see* § 3624(g)(1)(A), the BOP has determined inmates cannot continue to earn FTCs towards a pre-release community placement while in a pre-release community placement. To allow inmates to do so creates an impossibility: inmates would be applying time credits before they are earned. Beyer Decl. ¶ 21. If the BOP moved an inmate to a pre-release community placement before he earned FTCs and then he failed to earn the FTCs as projected or his PATTERN score changed, he would no longer be able to apply the FTCs. He would need to be removed from a pre-release community placement at that time. In light of this, the Bureau's interpretation of § 3624(g)(1)(A) is correct under the statute.

*Cox v. Rardin*, No. 2:24-CV-10676, 2025 WL 495342, *4-5 (E.D. Mich. Feb. 13, 2025), appears to be the sole decision to address Hoffman's argument. In that case, the court found the BOP's interpretation supported by statute, and even if the inmate was entitled to continue to earn FTCs, he did not necessarily have the right to apply them under § 3624(g)(1)(A). *Id.* at *4. The *Cox* Court explained:

In fact, the statute makes clear that only earned FTCs can be applied. *See* 18 U.S.C. § 3632(d)(4)(C). And this makes sense: the BOP cannot rely on its projection of future earned credits when applying FTCs because there is no guarantee that an inmate will actually earn those credits. . . . Moreover, the FSA makes clear that merely earning sufficient FTCs is not enough; an inmate must still meet the additional statutory requirements before those FTCs can be applied for transfer. 18 U.S.C. § 3624(g) (including the requirement that an inmate "has earned time credits ... in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment"). Even if BOP policy leads to an inmate earning FTCs in prerelease custody that will never amount to any benefit, the BOP is still bound by statute when applying them.

*Id.* at *5.

Hoffman's view of § 3632(d)(6) is not supported by the FSA. That section provides: "The incentives described in this subsection shall be in addition to any other rewards or incentives for which a prisoner may be eligible." 18 U.S.C. § 3632(d)(6). It may be true that inmates can receive multiple incentives for their programming,[3] but Hoffman's interpretation ignores two key provisions of the FSA. First, to earn FTCs, inmates must successfully participate in and complete programming. 18 U.S.C. § 3632(d)(4)(A) ("successfully completes," "successful participation"). If Hoffman has released from BOP custody due to his GCT, he is not able to participate in programming. Second, as mentioned above, Hoffman's interpretation creates a situation where he is applying FTCs for a pre-release community placement before he has earned them, contrary to § 3624(g)(1)(A).

---

[3] One example of the applicability of this provision is that inmates do not forfeit their ability to potentially obtain an early release under 18 U.S.C. § 3621(e) for successful completion of the residential drug abuse program because they would also be earning FTCs for their participation in the same program.

Hoffman's claim regarding earning FTCs based on the total sentence imposed or while in a pre-release community placement should therefore be denied, if the Court reaches the merits of his Petition.

## III.   An Evidentiary Hearing Is Not Required.

In a habeas corpus proceeding, an evidentiary hearing is appropriate only where material facts are in dispute. *Toney v. Gammon*, 79 F.3d 693, 697 (8th Cir. 1996); *Ruiz v. Norris*, 71 F.3d 1404, 1406 (8th Cir. 1995). An evidentiary hearing is not required where the question is what conclusion can properly be drawn from the undisputed facts. *See United States v. Winters*, 411 F.3d 967, 973 (8th Cir. 2005). That is the case here. The accompanying declarations and exhibits provide sufficient facts to deny Hoffman's petition. An evidentiary hearing is unnecessary because this case can be resolved based on the existing record.

———————————————

## **CONCLUSION**

The government respectfully requests that the Court dismiss or deny the petition in its entirety.  FTCs are an opportunity, not an entitlement sufficient to support a habeas petition. Hoffman's petition poses a hypothetical question and is not ripe. Further, even on the merits, the BOP's interpretation of § 3624(g)(1)(A) is correct.

Dated: July 24, 2025

JOSEPH H. THOMPSON
Acting United States Attorney

*/s/ Adam J. Hoskins*

BY:  ADAM J. HOSKINS
Assistant United States Attorney
Attorney ID Number 393157
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN  55415
(612) 664-5600
adam.hoskins@usdoj.gov

**Attorneys for Respondent**